**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Jerroll sanders,

PRO SE PLAINTIFF,

vs.

Judge Judy A. Hartsfield,
Sheila Ross, Guardian Ad Litem
State of Michigan,
Wayne County Probate Court,
Defendants

Case: 4:25−cv−10314
Assigned To : Kumar, Shalina D.
Referral Judge: Altman, Kimberly G.
Assign. Date : 2/3/2025
Description: CMP SANDERS v
HARTSFIELD ET AL (JP)

Case No.:

Pleading Title: **COMPLAINT AND PETITION FOR RELIEF**

## COMPLAINT AND PETITION FOR RELIEF, JUDGE JUDY A. HARTSFIELD AND MICHIGAN PROBATE COURT

Plaintiff Jerroll Sanders, proceeding pro se, hereby files this Complaint against Defendants Judge Judy A. Hartsfield, Guardian Ad Litem Sheila Ross, the Wayne County Probate Court, and the State of Michigan (collectively, "Defendants"), seeking redress for a series of grave constitutional violations and illegal actions, including, but not limited to:

- The State of Michigan's operation of the Wayne County Probate Court as part of a statewide illegal probate court enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).

- Abuse of power and due process violations by state officials in the Wayne County Probate Court.

- Elder abuse and elder financial exploitation by state officials in the Wayne County Probate Court.

- Retaliation against individuals who challenge the illegal and unconstitutional actions of state officials in the Wayne County Probate Court.

Plaintiff seeks $2,000,000 in compensatory and punitive damages for tort claims arising from the state's illegal probate enterprise, declaratory relief to formally recognize the violations of Plaintiff's civil rights, injunctive relief to halt ongoing retaliatory actions, and systemic reforms to ensure the Michigan Probate Court criminal enterprise no longer

1

serves as a tool for corruption, retaliation, and exploitation of vulnerable adults. Plaintiff also seeks $1,000,000 each from Judge Judy A. Hartsfield and Attorney Sheila Ross for causing great injury to Plaintiff while acting outside the scope of their authority.

**THE PARTIES**

1. **Plaintiff:** Jerroll Sanders is a resident of Michigan. Her domicile is Florissant, MO. (**Exhibit 1**) Plaintiff—a national advocate for policing reform—is aggrieved by the actions of the Wayne County Probate Court, specifically those of Judge Judy A. Hartsfield and Guardian Ad Litem Sheila Ross. Sanders has served as the sole caregiver, Durable Power of Attorney, Medical Power of Attorney, and *nominated guardian* for her elderly parents, Willie Hamilton (age 93) and Helen Hamilton (age 90). Plaintiff's parents have been the subjects of unwarranted guardianship/conservatorship actions filed by her siblings, nephew and niece who seek to benefit from the Hamiltons' estate and cause harm to Plaintiff for the trust and respect she garners from her parents Willie and Helen Hamilton due to a lifetime of kindness, care and financial independence.

2. **Defendant:** Judge Judy A. Hartsfield is a judge on the Wayne County Probate Court. She is being sued in both her personal and official capacity for acting outside the scope of her authority and violating Plaintiff's constitutional rights, including the *right to due process, the Fifth Amendment right to confront accusers, and the right to be free from financial exploitation and elder abuse and for acting in bad faith and with malice*, as detailed in this complaint.

3. **Defendant:** The Wayne County Probate Court is an entity within the State of Michigan and a necessary party to this lawsuit, as it is the institution through which unlawful actions and constitutional violations occurred. The Wayne County Probate Court is a component of a corrupt system that functions on behalf of the State of Michigan as a criminal enterprise. The unlawful actions occurring in the Wayne County Probate Court are systemic and prevalent in probate courts throughout the State of Michigan.

4. **Defendant:** The State of Michigan is a governmental entity under which the Wayne County Probate Court and Judge Judy A. Hartsfield and Sheila Ross operate. The State of Michigan perpetuates its criminal probate enterprise, despite its *constitutional obligation to oversee and regulate courts in a way that protects vulnerable adults from abuse, exploitation, and constitutional violations*. The State of Michigan is being sued for failing to intervene and allowing the Wayne County

2

Probate Court and the entire Michigan Probate Court system to function as a criminal enterprise in violation of the federal *Racketeer Influenced and Corrupt Organizations Act (RICO)*, 18 U.S.C. § 1962, and Michigan's Organized Crime and Racketeer Influence Act (750.159g, et. seq).

**JURISDICTION AND VENUE**

Venue is proper in this Court because the Wayne County Probate Court is located in Wayne County, Michigan, and the events giving rise to these claims occurred within this jurisdiction. Additionally, the alleged RICO violations are occurring statewide and involve activities affecting interstate commerce.

With respect to Plaintiff's state law claims (e.g., emotional distress, defamation, or other tort claims), the Court has jurisdiction under **28 U.S.C. § 1332** due to complete diversity between Plaintiff whose domicile is in Missouri and Defendants, residents of Michigan, with an amount in controversy exceeding $75,000. Venue is proper in this District under 28 **U.S.C. § 1391(b)**, as the events giving rise to the claims occurred in this District, and the Defendants are residents of and/or operate in this jurisdiction.

**Claim for Relief Against the State of Michigan to End Systemic Constitutional Violations and State of Michigan and Federal RICO Act Violations**

Plaintiff, an involved party and the Hamiltons' chosen Durable Power of Attorney, Medical Power of Attorney, and nominated guardian, seeks to halt the systemic deprivation of Plaintiff's constitutional rights by state officials under the *Ex parte Young exception to sovereign immunity (209 U.S. 123, 1908). which permits a plaintiff to sue state officials for injunctive relief to stop ongoing violations of federal law*. Plaintiff asserts that the Wayne County Probate Court, under the authority of Michigan State government, operates as an illegal enterprise exhibiting the characteristics of a **racketeering organization** as defined by **18 U.S.C. § 1962** and the **Michigan's Organized Crime and Racketeer Influence Act (MCL 750.159i)**.

Defendant Judy A. Hartsfield and others named in this complaint help advance the goals of the state-run criminal probate enterprise that stores, transfers, and manages assets and people. *The State of Michigan's Probate Court criminal enterprise engages in interstate commerce through the storage, transfer, and management of assets and people. The enterprise fuels businesses, economies, and individuals while depleting wealth seniors amassed over a lifetime via overcharging, exploitation, and theft*. The probate enterprise is also responsible for the premature death of seniors due to mistreatment and neglect. Numerous studies, news reports, and investigations reveal that Michigan's probate courts

evidence a pattern of racketeering activity that includes fraud, theft, and other criminal offenses.

Judge Judy A. Hartsfield, Guardian Ad Litem Sheila Ross, and others in the State of Michigan's probate enterprise are actively involved in perpetuating the enterprise's illegal objectives through fraud, violation of court rules, violation of parties' constitutional rights and through threats, intimidation, and racketeering activities in violation of **18 U.S.C. § 1962 and MCL 750.159i**. Defendant Hartsfield and other Judges engage in actions that give rise to constitutional claims and tort claims originating from RICO activities. Plaintiff's constitutional claims and RICO-related claims raise significant federal questions, including violations of civil rights and the RICO statute.

Plaintiff seeks system-wide injunctive and declaratory relief to address the ongoing constitutional violations and halt activities that involve exploitation of vulnerable adults and the acceleration of their death. Such relief will prevent further deprivation of constitutional rights and stop the system's continued operation as a RICO-type enterprise to better protect affected individuals from harm.

**Claim Against Judge Judy A. Hartsfield and Sheila Ross Personally**

Plaintiff also seeks damages from Defendants Judge Judy A. Hartsfield and Attorney Sheila Ross whom Plaintiff believes are acting outside their judicial and professional authority while violating Plaintiff's constitutional rights. **This claim is brought under 42 U.S.C. § 1983**, which permits lawsuits for constitutional violations by state actors, including judges, *who act outside the scope of their judicial duties or engage in conduct that violates clearly established constitutional rights*. Judicial immunity does not apply to actions taken outside a judge's official role or actions that infringe upon the constitutional rights of individuals.

**INTRODUCTION**

This case arises from an underlying case filed in the Wayne County Probate Court by Kimberly Baker and Carlos Hamilton, specifically, 2024-894729-GA and 2024-894728-GA seeking guardianship and conservatorship over Plaintiff's parents, specifically, **93-year-old Willie Hamilton** and **90-year-old Helen Hamilton**. Plaintiff's sister, **Kimberly I. Baker**, and Plaintiff's nephew, **Carlos Hamilton**, conspired with Plaintiff's brother, **Gary Hamilton**, niece **Terra Page**, and sister **Deborah Cobb** to gain physical custody of Plaintiff's parents and financial control over their estate. Deborah Cobb, who is terminally ill, says she was involved in the process under false pretense.

Plaintiffs' parents, Willie Hamilton and Helen Hamilton, executed Durable Power of Attorneys (POAs) that identified Plaintiff as their *nominated guardian* (the person who should become guardian if the need for guardianship were to arise). The parties also

4

executed medical powers of attorney (MPOAs) that assigned Plaintiff authority to make medical decisions on behalf of Helen Hamilton and Willie Hamilton.

For more than four years, guardianship/conservatorship petitioners Kimberly I Baker, Carlos Hamilton and other conspirators have conspired to remove Plaintiff from her role as power of attorney, medical power of attorney, and nominated guardian. Years earlier, **Kimberly Baker** expressed intent to supplant Plaintiff in the guardianship role when conversing with a social worker at Beaumont Behavioral Center (**Exhibit 2**). Baker learned of the medical appointment from Gary Hamilton who agreed to accompany his mother to the appointment scheduled months earlier by Plaintiff who was away receiving medical treatment at the Cleveland Clinic. As her cousin Angel Lane will testify, Baker immediately began sharing details of Helen Hamilton's private memory diagnosis with family members far and wide in anticipation of her move to become guardian. Baker has been a lifelong thief. She has stolen tens of thousands of dollars from her parents and even stole funds from her Aunt Mary Lane (**Exhibit 3**). Plaintiff has a video of Willie Hamilton at Cleveland Clinic discussing the degree to which Baker has stolen from her parents during her lifetime.

On May 21, 2024, **Kimberly Baker** and **Carlos Hamilton** filed petitions in Wayne County Probate Court seeking co-guardianship and co-conservatorship over Helen Hamilton and Willie Hamilton. Petitioners' probate filings **falsely claimed that Plaintiff Jerroll Sanders had engaged in a number of criminal acts evidencing moral turpitude**. Specifically, petitioners claimed Plaintiff had exploited, abused, neglected, abandoned, and failed to administer medications to Helen and Willie Hamilton (**Exhibit 4**). Guardianship petitioners also falsely claimed that Willie Hamilton had *Possible Dementia*, knowing the allegation was patently untrue. Willie Hamilton has been evaluated at least six times since the guardianship filings. Medical professionals consistently found Willie Hamilton to be of sound mind.

**Gross Appearance of Impropriety**

**The Plaintiff has concerns about the relationship between Judge Judy A. Hartsfield and Kimberly Baker and Carlos Hamilton who petitioned for guardianship of Helen Hamilton and Willie Hamilton.** Plaintiff believes there is an improper relationship between Judge Judy A. Hartsfield and guardianship petitioners. These concerns arise from the *extreme deference* Judge Hartsfield consistently shows to the Petitioners, as well as what Plaintiff perceives as an *uncharacteristically adversarial and hostile attitude* from Judge Hartsfield toward her. The Plaintiff recalls that Judge Hartsfield made a pointed remark upon first encountering her, stating, **"So, this is Jerroll Sanders."** The Plaintiff found the statement and subsequent behavior unusual, believing they conveyed bias against her.

The plaintiff alleges that Judge Hartsfield has shown a willingness to cause her harm, as evidenced by a number of the Judge's actions, including a financial ruling Judge Hartsfield issued that was outside the scope of her judicial authority. Guardian Ad Litem Sheila Ross also expressed animus towards Plaintiff and a willingness to do her harm on behalf of her sister Kimberly Baker. Specifically, during the initial probate proceeding, **Guardian Ad Litem Sheila Ross told Plaintiff what she would do to Plaintiff if she were Kimbely Baker, Plaintiff's sister.**

*Additionally, Plaintiff's recent unjustified arrest and a series of other events lead Plaintiff to suspect an ongoing conspiracy involving judicial officers, law enforcement members, and probate petitioners, all of whom appear to be collaborating to "show" Plaintiff that she cannot thwart the Judge's efforts to place the Hamiltons under guardianship*—an outcome that Plaintiff's family members Gary Hamilton, Terra Page, and Guardianship Petitioners Carlos Hamilton and Kimberly Baker are desperately working to achieve. **The same family members pushing for the guardianship orchestrated Plaintiff's arrest.** Plaintiff is currently suing the same family members in the United States District Court for the Eastern District of Michigan, Southern Division, for various torts related to their guardianship filings (**Case No.: 24-cv-12314**).

The Plaintiff has requested that federal authorities investigate the connections between her family members and officers of the court. Plaintiff believes the actions of the guardianship petitioners appear to extend beyond their personal legal capacities, which reinforces her suspicion that they are receiving assistance. Specifically, Plaintiff has asked investigators to examine the relationships between her siblings and **Judge Shannon Holmes**—a close friend of Kimberly Baker, who married Baker's daughter and has delivered gifts to Baker's home; **Judge Judy A. Hartsfield**, who presided over the guardianship action involving Kimberly Baker and Carlos Hamilton; **Guardian Ad Litem Sheila Ross**, who made threatening statements to Plaintiff regarding what she would do if she were Kimberly Baker; Court-appointed **Attorney LaChelle Caver**, who failed to provide adequate representation for Plaintiff's parents; and officers of the Detroit Police Department, who refused to accept testimony from the only witness who observed the encounter. The witness testified that Terra Cobb assaulted the Plaintiff and slammed her against a brick wall. Terra Page's daughter was strategically positioned to begin video recording when the Plaintiff attempted to stop the assault. The Plaintiff has video evidence to substantiate her allegations. Additionally, Terra Page gained unauthorized entry into the Plaintiff's home and locked both the Plaintiff and her mother out of their dwelling. Law enforcement did not allow Helen Hamilton to access her home. Instead, Detroit Police Department (DPD) officers at the scene permitted Terra Page and her adult children to remain in the Plaintiff's and her parents' home until they chose to leave.

## BACKGROUND FACTS

The Wayne County Probate Court, under the influence of Judge Judy A. Hartsfield and other judges, operates as part of a statewide criminal enterprise. Through a network of corrupt actors, the court engages in financial exploitation and elder abuse, systematically targeting vulnerable individuals through unlawful guardianship actions, misuse of probate powers, and the appointment of professionals with financial interests in the outcomes of cases. The plaintiff, a senior citizen, has been abused and financially exploited by Judge Hartsfield and the Probate Court criminal enterprise, forced to spend tens of thousands of dollars on a probate proceeding that would have been resolved long ago if Judge Hartsfield had carried out her duties in accordance with probate court rules and the law rather than advancing the interests of severely flawed guardianship petitioners.

### Judge Judy A. Hartsfield Not Fit to Preside

*Judy A. Hartsfield fosters a courtroom environment in which defendants and potential wards are unable to access a fair and equitable judicial forum.* She, along with her colleagues (other judges in the Michigan probate system), exerts significant control over lucrative guardianship and conservatorship assignments, steering them to law firms and professionals who maintain favorable relationships with the presiding judge.

The process is plagued by systemic conflicts of interest that perpetuate a corrupt environment, where attorneys, fiduciaries, court-appointed attorneys, medical personnel, and other professionals are financially incentivized to assist judges in asserting guardianship over vulnerable seniors subjected to probate proceedings. **The lack of *transparency and oversight* in a system where millions of dollars amassed by seniors are instantly available *for the taking* creates an environment ripe for corruption and abuse.**

In any objective legal forum, evidence provided by Plaintiff's counsel in a filing titled *Objections* would have led to the immediate dismissal of her parents' guardianship matter, since it revealed Plaintiff was her parents' sole caregiver for over ten years and proved that Petitioners' claims on their guardianship filings were meritless and designed to gain control over Helen Hamilton's and Willie Hamilton's financial assets for personal gain. The filings also provide evidence of substantial theft, fraud, and exploitation on the part of petitioners.

Kimberly Baker, Terra Page, Carlos Hamilton, and Gary Hamilton have been emboldened by Judge Judy Hartsfield's unwillingness to hold them accountable. Judge Hartsfield has created an environment in which guardianship petitioners and their allies feel free to assault the plaintiff—a senior citizen, file countless false police reports, make false adult abuse reports to Adult Protective Services (APS), orchestrate the plaintiff's arrest, and

engage in continuous actions to harm the plaintiff, damage her reputation, and undermine her perceived fitness to serve as guardian—all while jeopardizing the lives of Willie Hamilton and Helen Hamilton.

**Case Assignment Demands Review.**

It is common for a court case to be reassigned. Given the circumstances, the Plaintiff believes that the assignment of the Hamiltons' case to Judge Judy Hartsfield warrants scrutiny to determine whether the reassignment adhered to Court practices. According to the Wayne County Probate Court website, when Willie Hamilton's guardianship case was initially filed, it was assigned to Attorney David A. Perkins (**Exhibit 5**). The case identified Willie Hamilton as a Legally Incapacitated Individual. However, it was repeatedly determined after filing that Willie Hamilton is not legally incapacitated. The case (JCHR) was subsequently reassigned to Judge Judy A. Hartsfield. It appears that, following the reassignment of Willie Hamilton's case to Judge Hartsfield, Helen Hamilton's case was filed and also assigned to her. The Plaintiff believes the assignment was intentionally directed to Judge Hartsfield by someone within the court, to facilitate Hartsfield in gaining control of the case and ensuring that Kimberly Baker and Carlos Hamilton would prevail in their guardianship action against Jerroll Sanders, Willie Hamilton, and Helen Hamilton.

The plaintiff suspects that at the time, Judge Hartsfield may not have known that Baker and Hamilton were ineligible to serve as guardians due to their many flaws. However, as the case progressed, helping Baker and Hamilton win the guardianship case became increasingly personal for Judge Hartsfield. She became determined to prove to Jerroll Sanders, who was fighting to protect her parents, that she, Judge Hartsfield, was most powerful the ultimate arbiter of Willie Hamilton's, Helen Hamilton's, and Jerroll Sanders' fate.

**Judge Judy A. Hartsfield's Abuses Were Previously Acknowledged by a Federal Court.**

A federal court granted the parents of a 7-year-old authority to pierce Judge Hartsfield's immunity and sue her personally after she placed their son in foster care following an incident where his father mistakenly gave him a Mike's Hard Lemonade at a Detroit Tigers game in 2008. Despite the court's findings, the State of Michigan continues to allow Judge Hartsfield to preside over significant family court cases.

**Plaintiff's Wrongful Imprisonment in Wayne County Detention Center.**

On January 2, 2025, Plaintiff left the home she shares with her parents at 19315 Monica to allow her brother, Gary Hamilton, and his son, Carlos Hamilton, to spend time with Willie Hamilton, who had been placed on in-home hospice care. Plaintiff returned to the Hamiltons' home after learning from Willie of Gary's plan to transport him to Corewell

Health (also known as Beaumont Hospital) in Royal Oak, Michigan. Willie had made it clear that he did not want to return to the hospital. He wanted to die at home.

Upon arriving at her residence, Plaintiff discovered that Terra Page—her niece, who was aligned with Baker and other petitioners—was inside the home Plaintiff shares with her parents. Page had been left in the home by Gary Hamilton who **kidnapped Willie Hamilton** and transported him to Corewell Health in Royal Oak. Upon arriving at her residence, Plaintiff contacted the Detroit Police Department (DPD) to request assistance in gaining access to her home. At that time, she was unaware that Willie Hamilton had been kidnapped from the premises.

The Plaintiff waited for the police to arrive but soon witnessed **Page kidnapping her 90-year-old grandmother**, Helen Hamilton, from the residence. Helen was poorly dressed, resisting, and complaining of being very cold, demanding to go inside. At the same time, Terra was instructing Michael to drag Helen's "ass" to the car. Terra Page has never transported Helen Hamilton anywhere and had no reason to do so. She gained entry to the Hamiltons' home through Gary Hamilton, who claimed he wanted to spend time with his dying father. Terra Page does nothing for her grandparents unless she is paid. She almost never visited her grandparents and had absolutely no reason or right to take Helen Hamilton anywhere.

Seeing her mother's distress, standing in the cold with her coat open in very cold weather, Plaintiff exited her car, walked onto the porch, and attempted to open the door with her key so she could return her mother to the inside of their home. Terra Page and her daughter, Malia—standing inside Plaintiff's residence—repeatedly turned the lock in the opposite direction to prevent Plaintiff and Helen's entry. When Page finally exited the front door to stand on the porch, Plaintiff attempted to usher her mother inside. Terra Page began aggressively slamming Plaintiff against the concrete wall with her butt and back near the front porch door to prevent her from reaching her mother. A witness to the entire encounter urged Page to stop the assault, but she continued. Plaintiff struggled to reach her mother, trying to clear the door so she could bring Helen back inside where it was warm.

Page continued her assault. After being repeatedly slammed against the wall, Plaintiff sought to stop Page. Page's daughter immediately began videotaping, falsely claiming that Plaintiff had assaulted Page. Page then called the police, accusing Plaintiff of assault.

Meanwhile, **a white Cadillac with license plates EGZ 6755** repeatedly circled the block about 10 times. Plaintiff and others mentioned the suspicious vehicle during their repeated 911 calls, expressing concern that the driver might be there to cause harm. When officers arrived, they reviewed Page's video and took witness testimony from the occupants of the

white Cadillac, who subsequently endorsed Page's version of events. **Officers on the scene refused to interview the only witness who observed the entire encounter that included Page's repeated assault on Plaintiff, a senior citizen.**

One officer at the scene told Plaintiff he did not want to arrest her. He then told Plaintiff that someone said, "We want her." The Plaintiff was arrested and held at the Wayne County Detention Center for two days. Plaintiff was released about 48 hours later without charges. The plaintiff's Attorney had waited for hours that day, seeking to represent his client before she was dismissed. The plaintiff's case was never called. Before leaving the Detention Center, Plaintiff repeatedly confirmed there were no pending charges against her. On January 24, 2025, while attempting to obtain a police report related to her January 2nd arrest, Plaintiff discovered that she had an outstanding warrant at the 36th District Court. Plaintiff notes that she is currently suing Terra Page, Carlos Hamilton, Kimberly Baker, and Gary Hamilton for levying false criminal allegations against her in their guardianship petition and during guardianship proceedings. During the encounter with Page, Plaintiff could hear Baker on Page's telephone providing directions. **The plaintiff knows the arrest was planned: Three days earlier, Page's sister and Baker's daughter posted two separate photos of a jail cell on social media foretelling the arrest of Plaintiff** (Exhibit 6)

**Lawlessness at Corewell Health Center (Beaumont Hospital) in Royal Oak**

The guardianship petitioners continued their reckless disregard for the law by interfering with the care of Willie Hamilton after he was forcibly removed from his home and taken to Corewell Health Center in Royal Oak (formerly Beaumont). For five days, the Plaintiff was unaware of her father's whereabouts, despite holding both his medical power of attorney and durable power of attorney. Baker assisted in admitting Hamilton under privacy to conceal his location from the Plaintiff. She also accessed Willie Hamilton's medical records in violation of HIPAA and falsely established herself as his medical decision-maker. During an earlier visit to Corewell, Baker accessed Willie Hamilton's MyChart account, removed Plaintiff's name, and set herself as Willie's primary contact. When Willie experienced a medical emergency, Corewell contacted Baker instead of Plaintiff.

Most recently, the guardianship petitioners placed Willie under privacy at Corewell Health, effectively making him undiscoverable after *kidnapping* him from in-home hospice care at his home on January 2, 2025. **A family member reported that during his stay, Kimberly Baker, Carlos Hamilton, and Gary Hamilton falsely told Willie that the Plaintiff had tried to kill him. They also repeatedly defamed Plaintiff and exerted duress in an attempt to pressure Willie into distributing his assets equally among his adult children.** Later, Willie recounted these conversations to a family member, explaining that

he had signed a document without understanding its contents. He also reiterated to the family member the false allegations made by Gary Hamilton, Carlos Hamilton, and Kimberly Baker, including claims that Plaintiff was trying to kill him.

In an attempt to control Willie's care, Baker submitted expired guardianship papers to Corewell, claiming that Willie Hamilton was under guardianship. This claim was used to challenge Plaintiff's Medical Power of Attorney status. According to Willie Hamilton's physician, Corewell Health's attorneys had to review the Wayne County Probate Court guardianship record to confirm that Willie was not under guardianship and to establish that Plaintiff had the authority to direct his care. A week later, Corewell Health social workers held a secret meeting with Kimberly Baker, Gary Hamilton, and Carlos Hamilton— petitioners who are seeking control of Willie's estate. Corewell excluded Plaintiff—Willie Hamilton's current Medical Power of Attorney—from the meeting. During the secret meeting, Corewell appointed Gary Hamilton Willie Hamilton's Medical Power of Attorney, defying Willie's directive to recognize Jerroll Sanders as his personal representative overseeing his medical care. Corewell continues to reference the upcoming guardianship court date when attempting to explain its actions, leading Plaintiff to believe someone from the court is aiding probate court petitioners in their dealings with Corewell Health.

### COUNT I: Judge Hartsfield's Extreme Bias and Malice Towards Plaintiff

### Extreme Bias and Hostility on the Part of Judge Judy A. Hartsfield

Judge Judy A. Hartsfield has exhibited extreme bias and hostility toward the Plaintiff at every stage of Willie Hamilton's and Helen Hamilton's guardianship proceedings, making it impossible for the Plaintiff—an interested party accused of criminal wrongdoing—to challenge false allegations petitioners made against her on guardianship petitions. Judge Hartsfield has exhibited open and apparent bias against Plaintiff in the presence of petitioners via intimidation, threats, and retaliatory actions that fall outside the bounds of her judicial authority. **Michigan law mandates that judges maintain impartiality in proceedings and refrain from behavior that could impair the fairness of a trial, as outlined in MCR 2.003(A) (Michigan Court Rules – Disqualification of Judge).** Judge Hartsfield's actions violate these fundamental principles and have impaired Plaintiff's ability to secure an impartial examination of the facts necessary to establish that guardianship petitioners made false claims against Plaintiff on their guardianship petitions.

### Initial Proceedings

Judge Hartsfield made her animosity toward Plaintiff immediately apparent at the surprise hearing Plaintiff was not expected to know about when the guardianship action was initiated by petitioners who never accomplished service as required by Michigan Law.

Hartsfield's first utterance to Plaintiff on her Zoom call involved stating, **"So, this is Jerroll Sanders."** The Judge then proceeded to interrogate Plaintiff in a hostile manner, challenging her on the smallest details and denigrating her with every opportunity. The Judge's questioning of Plaintiff contrasted sharply in tone and demeanor with her cozy interactions with the guardianship and conservatorship co-petitioners. Judge Hartsfield swiftly dismissed Plaintiff's valid objections that the Petitioners had not followed proper procedures for filing their guardianship and conservatorship cases (**Exhibit 7),** including those outlined in **MCL 700.3203 (Notice Requirements)**. Hartsfield abruptly responded, "This is an emergency hearing. We didn't have to give you any notice."

Without inspection or inquiry, Judge Hartsfield stated she was terminating Plaintiff's Powers of Attorney and medical rights in violation of Michigan law governing Powers of Attorney (**MCL 700.5501**). She kicked Plaintiff and her parents (Willie and Helen Hamilton) off the courtroom Zoom when the potential ward, Willie Hamilton, sought to contest lies being offered by his adult children. **Hartsfield did not allow Willie Hamilton to speak one word in his defense.** She devoted almost the entire Zoom call to allowing petitioners to berate Plaintiff ad nauseum.

The plaintiff later learned that Judge Hartsfield had ordered Willie and Helen Hamilton to be "placed" with a third-party guardian, Family Option Services, after she removed them from the Zoom call when Willie Hamilton sought to speak. The plaintiff was also informed that Judge Hartsfield told everyone present, "I don't believe a word Jerroll Sanders says" after booting the plaintiff from the Zoom call. An attorney subsequently hired by the plaintiff found no record of a court order from Judge Hartsfield invalidating Willie and Helen Hamilton's Durable Powers of Attorney, which named Jerroll Sanders as their agent. The plaintiff also discovered that Judge Hartsfield does not always document her verbal rulings in the form of court orders, thereby leaving parties confused as to the status of important case issues.

**COUNT II: Abuse of Power, Judicial Misconduct, and Hostile Courtroom Practices**

**Pattern of Judicial Misconduct and Abuse of Power**

Judge Judy A. Hartsfield, through her actions and rulings, has established a pattern of misconduct that violates the due process rights of Plaintiff Jerroll Sanders. Had potential ward Willie Hamilton been permitted to testify in any of Judge Hartsfield's multiple proceedings, he would have testified that the allegations made by the guardianship petitioners against Plaintiff in their guardianship petitions are a series of lies. **Willie Hamilton has been deemed mentally sound by multiple medical professionals at Cleveland Clinic, Ford Hospital, Corewell Health, and an independent evaluator, but**

petitioners falsely claim on their guardianship petition that Willie Hamilton has *possible dementia*.

Judge Hartsfield has denied both Plaintiff and Willie Hamilton their right to due process by preventing them and Plaintiff's attorney from refuting false statements made by petitioners in guardianship filings. **A document titled *Objections*—prepared by Plaintiff's attorney— exposes the fraudulent activities and motives of the petitioners,** whose goal is to forcibly gain control over Helen and Willie Hamilton's estate while punishing Plaintiff for her significant role in her parents' lives. Judge Hartsfield's refusal to allow Plaintiff's attorney to discuss evidence in the *Objections* document, which impeaches petitioners' false allegations, disregards Plaintiff's 5th Amendment right to confront her accusers. *The Michigan Rules of Evidence (MRE 801-807) grant defendants the right to cross-examine witnesses.* Denying Plaintiff this right violates the principles of due process enshrined in both the U.S. and Michigan constitutions.

**Judge Hartsfield Fails to Uphold a Legal Courtroom.**

Judge Judy A. Hartsfield disregards guardianship petitioners' obvious criminal behavior to avoid holding them accountable. **Kimberly Baker submitted court evidence confirming that she and other petitioners conspired to and did violate Plaintiff's privacy rights by recording conversations in Plaintiff's private spaces and hacking into Plaintiff's computer.** The Plaintiff has provided evidence in her *Objections* (**Exhibit 8**) substantiating that Kimberly Baker stole thousands of dollars from Willie Hamilton and Helen Hamilton and engaged in other criminal acts. Additionally, the Plaintiff asserts that Interested Party Terra Page, who testified against Plaintiff during the first hearing, was previously barred from Beaumont Hospital (now Corewell Health in Royal Oak) for pushing her 70-year-old mother to the floor and causing her arm to break. The petitioners have other documented patterns of criminal conduct that Judge Hartsfield has chosen to ignore, which includes evidence showing that Kimberly Baker stole thousands of dollars from Willie Hamilton and her Aunt Mary Lane.

Judge Hartsfield has shown a disregard for the welfare of Willie Hamilton (93) and Helen Hamilton (90). When Hartsfield abruptly placed Willie Hamilton and Helen Hamilton under temporary guardianship with Family Option Services (FOS) in St. Claire Shores, Michigan, she assigned FOS medical decision-making authority, which conflicted with (overlapped)

powers assigned to the Plaintiff in the Hamiltons' Medical Powers of Attorney. Under Michigan law, Judge Hartsfield had an obligation to ensure that such discrepancies did not exist.

**Hostile Courtroom Practices**

Judge Hartsfield curtails the free exercise of speech necessary for due process by actively silencing the Plaintiff's legal counsel and preventing them from fully representing their client. **MCR 2.001 (General Rules of Court) requires the court to ensure fair and proper conduct during hearings.** Judge Hartsfield's actions, which include intimidating legal counsel and litigants, violate these standards and have the effect of chilling discourse in the courtroom. The Plaintiff's attorney, along with other counsel, appears unwilling to challenge Judge Hartsfield for fear of wrath and losing favor.

**Denial of Procedural Due Process**

During the initial Zoom court hearing on the Hamiltons' guardianship/conservatorship matter, prospective ward Willie Hamilton repeatedly sought to respond to false statements made by guardianship petitioners Carlos Hamilton and Kimberly Baker, as well as other family members aligned with them. They made numerous false claims about the care provided by the Hamiltons' sole caregiver, Jerroll M. Sanders, who is the Plaintiff in this matter. Petitioners also falsely claimed that Helen Hamilton wandered throughout the neighborhood. While Judge Hartsfield afforded petitioners extensive time to make false claims against Plaintiff, she gave Willie Hamilton no opportunity to defend himself against the false allegation that he was incapacitated. She also prevented Plaintiff from addressing the false statements made against her.

When Hamilton insisted on addressing the false statements made by the petitioners, Judge Hartsfield ejected both Willie Hamilton and Plaintiff Jerroll Sanders from the Zoom session, denying them the opportunity to participate in the remaining minutes of the meeting. During this time, she ordered Willie Hamilton and Helen Hamilton to be removed from the home they had occupied for over 50 years and placed with a temporary guardian. Hartsfield made this decision without the required preliminary investigation by the guardian ad litem or even a conversation with Helen Hamilton or Willie Hamilton, despite Plaintiff having provided the court with a medical document attesting that Willie Hamilton was of sound mind. He and his wife were also receiving 24/7 care from Plaintiff Jerroll Sanders and did not require or need a guardian.

**Hartsfield's conduct violated Plaintiff's procedural due process rights, as guaranteed by MCL 600.1701 (Rights of Parties and Counsel), which includes the right to meaningful participation in legal proceedings and the right to rebut false statements made by petitioners who are hostile to the Plaintiff.** Judge Hartsfield's exclusion of Plaintiff from the court Zoom call also violated **MCR 2.119**, which entitles the Plaintiff and

prospective wards to the right to participate in discovery and pretrial conferences in probate cases involving contested matters, such as disputes over wills or guardianship.

**Threats and Retaliation**

Retaliation by judicial officers is prohibited under **MCR 9.104** (*Grounds for Disciplinary Action*) and under **MCL 600.1605** (*Misconduct – Contempt of Court*). During the October 2024 hearing, Judge Hartsfield explicitly threatened retaliation against Plaintiff, including promising to hold her in contempt if Willie Hamilton and Helen Hamilton (represented by counsel) failed to submit to a neuropsychiatric evaluation. Willie Hamilton and Helen Hamilton have an attorney appointed by Judge Judy A. Hartsfield who has provided no assistance. Attorney Chavers has spoken to Willie Hamilton two times since the case began. She spent her first conversation with Willie Hamilton berating Plaintiff upon learning Plaintiff had secured her own legal counsel.

**Failure to Assure Protections Provided by Law**

Judge Judy A. Hartsfield failed to ensure compliance with **MCL Section 700.5305** of the Protected Individuals Code (Excerpt) Act 386 of 1998, which outlines *the duties of a Guardian Ad litem, including compensation and legal counsel* (**Exhibit 9**). Guardian Ad Litem Sheila Ross failed to uphold any of the investigative duties prescribed by **MCL 700.5305**. As a result, the Plaintiff has been forced to spend thousands of dollars on a prolonged, unjust guardianship proceeding predicated upon baseless allegations of moral turpitude.

The Plaintiff's first encounter with Guardian Ad Litem Sheila Ross occurred when Kimberly **Baker entered the home of Helen and Willie Hamilton and announced that she had a representative from Wayne County Probate Court (Ross) on her iPhone who needed to interview Willie and Helen Hamilton.** The Plaintiff did not believe Baker, finding it hard to believe that an officer of the court would conduct an interview with anyone on another person's phone. The Plaintiff's second encounter with Sheila Ross took place in Judge Judy A. Hartsfield's courtroom during the first guardianship/conservatorship proceeding. At that time, Guardian Ad Litem Sheila Ross threatened the Petitioner, telling her what she would do to her if she were Baker.

**COUNT III: Tortious Interference with Plaintiff's Rights**

Judge Hartsfield engaged in tortious interference with the Plaintiff's contractual rights by unlawfully invalidating Willie and Helen Hamilton's Powers of Attorney (POAs) without attempting to determine the capacity of the wards **at the time the documents were signed**. Under Michigan law, the validity of a Power of Attorney can only be challenged upon clear and convincing evidence of incapacity (**MCL 700.5501**). Judge Hartsfield made

no attempt to assess the validity of Helen and Willie Hamilton's POAs based upon their capacity *at the time the documents were signed*. In doing so, she violated **MCL 700.5501** and caused significant physical and emotional harm to Willie, Helen, and the Plaintiff by invalidating documents Plaintiff uses to oversee Willie Hamilton's and Helen Hamilton's affairs. Plaintiff also learned from her attorney that Hartsfield never documented her ruling in the form of a court order. Guardianship petitioners used Hartsfield verbal declaration and unwarranted guardianship proceeding to continuously interfere with Willie Hamilton's medical rights and care at Corewell Health. Had Judge Hartsfield engaged in minimal inquiry, she would have discovered critical evidence confirming that both Willie Hamilton and Helen Hamilton had capacity when they signed their Durable Powers of Attorney, as witnessed by Kimberly Baker—one of the guardianship/conservatorship petitioners.

**COUNT IV: Violation of Plaintiff's 5th Amendment Rights**

Judge Hartsfield has denied the Plaintiff the opportunity to confront her accusers. The Defendants falsely accused the Plaintiff of committing several crimes to render her ineligible to serve as her parents' guardian and conservator. In response, the Plaintiff's attorney, with the Plaintiff's assistance, prepared a rebuttal titled *Objections* (**Exhibit 8 [Attachments Not Included]).** The objections, which Plaintiff's counsel submitted on or about August 22, 2024, impeached the guardianship petitioners' false claims and accurately conveyed the quality of support and care the Plaintiff provides to her parents. The Plaintiff's attorney sought to present objections during the hearing scheduled for August 28, 2024. However, Judge Hartsfield immediately interrupted Plaintiff's counsel, stating that she would not have sufficient time for counsel to present objections. Hartsfield then falsely claimed that Plaintiff's counsel was required to file objections seven days prior to the hearing. Although Plaintiff's counsel said nothing, counsel subsequently provided evidence to Plaintiff showing that Judge Hartsfield misstated the rule governing the timeframe for submitting objections (**Exhibit10**). Judge Hartsfield ended discussions on the Hamiltons' guardianship/conservatorship matter and announced she would review the objections at the next hearing. Before concluding, Hartsfield ordered Dr. Nicole Huby to conduct a neuropsychological evaluation of Helen Hamilton and Willie Hamilton to determine their mental capacity, even though Willie had already been evaluated and determined to be mentally sound by multiple physicians, including the geriatric physician who heads the Living Well Program at Cleveland Clinic—one of the nation's preeminent medical institutions.

At the subsequent hearing, a month later, Judge Hartsfield completely ignored the plaintiff's Objections. Instead, she threatened to hold Plaintiff in contempt of court if Plaintiff failed to compel Willie Hamilton and Helen Hamilton to submit to Dr. Huby's psychiatric evaluation. (During an initial discussion with the Plaintiff, Dr. Huby sought to ascertain the value of the Hamiltons' estate.) Willie Hamilton had extreme distrust for Huby and therefore refused to submit to her evaluation.

**The plaintiff believes that Judge Hartsfield failed to adhere to the spirit of Michigan's guardianship laws by not attempting to determine the validity of the allegations made by the guardianship petitioners against the plaintiff.** In addition to refusing to allow the plaintiff's counsel to present facts from her Objections document that would have refuted the petitioners' false claims, Judge Hartsfield made no effort to assess the quality of care the plaintiff provides to her parents. Had Judge Hartsfield performed her duties in accordance with both the spirit and letter of Michigan Probate Law, the Hamiltons' probate

action would have been resolved long ago based on the evidence provided in the Objections.

**COUNT V: Violation of Procedural Due Process (14th Amendment) Rights)**

Pursuant to procedural due process, Judge Judy A. Hartsfield had an obligation to ensure that both the Plaintiff and the guardianship petitioners Kimberly I. Baker and Carlos Hamilton adhered to the legal requirements for initiating and advancing a guardianship/conservatorship action before the Wayne County Probate Court. She did not. Plaintiff learned about the guardianship/conservatorship action by visiting the Wayne County Probate Court website. She visited the site because of something guardianship/conservatorship petitioners said during a raucous visit to the home where she resides with her parents who are the subject of petitioners' guardianship action. Judge Judy A. Hartsfield failed to require the petitioners of the guardianship/conservatorship action to comply with a majority of Michigan's rules governing the filing of guardianship/conservatorship actions (**Exhibit 7).** When plaintiff complained about lack of notice, lack of service and other failures, Judge Judy A. Hartsfield stated, "This is an emergency hearing. Petitioners did not have to serve you at all."

**COUNT VI: Judge Judy Hartsfield Aiding and Abetting in Wrongdoing**

*Objections* prepared by the Plaintiff's attorney ([**Exhibit 8**] provided without attachments) that there exists overwhelming evidence of co-petitioners' wrongdoing via conspiracy, including hacking into the Plaintiff's computer in violation of state and federal laws, tortious interference with contract performance, violation of the Plaintiff's privacy through unauthorized photographing and recording in private spaces of the home she occupied with her parents, theft of tens of thousands of dollars from the Plaintiff's and the Hamiltons' shared bank account, and abuse of the elderly—all of which Judge Judy A. Hartsfield chose to ignore.

Judge Hartsfield's willingness to overlook wrongdoing in her courtroom emboldened the co-petitioners, who gained unauthorized access to the Hamiltons' medical records at Corewell Health in Royal Oak, Michigan, in order to interfere with the Plaintiff's role as the Hamiltons' medical power of attorney (MPOA). The Plaintiff questions whether someone at the Wayne County Probate Court is in discussions with Corewell, since she cannot fathom an institution of that size repeatedly intervening to nullify Willie Hamilton's medical power of attorney, despite his written and verbal indications time and time again that he wants Jerroll Sanders (the Plaintiff) to oversee his medical care. Each time Corewell intervenes, it cites the pending guardianship case at the Wayne County Probate Court and has even stated that the Hamiltons are currently under guardianship, which they are not.

Guardianship petitioners subsequently carried out a plan to orchestrate the Plaintiff's arrest on January 2, 2025. Gary Hamilton told the Plaintiff that there were hired killers on site. Gary Hamilton has stated on multiple occasions that he knows people who hire killers.

### COUNT VII: Intentional Infliction of Financial Distress (Retribution)

### Judge Judy A. Hartsfield Is a Bar to Effective Legal Representation

The Plaintiff is entitled to adequate legal representation, which has been hindered by Judge Hartsfield's aggressive and overbearing style of courtroom management. The Plaintiff's counsel appeared unwilling to challenge the judge's rulings, even when they contradicted the law and court rules (**Exhibit 9**) because she wants to continue garnering Judge Hartsfield's favor. Prior to the November 2024 probate hearing, Plaintiff and her legal counsel agreed to part ways. Plaintiff's legal counsel seems unable to provide effective representation, as she appears intimidated by Judge Judy A. Hartsfield. Plaintiff directed her counsel to cease all activities on her behalf but continued to receive invoices amounting to thousands of dollars, which she refused to pay. Eventually, Plaintiff and her counsel agreed to part ways (**Exhibit 10**). When Plaintiff's counsel informed Judge Hartsfield that she and the Plaintiff had agreed to part ways, Judge Hartsfield ordered her clerk to convene a private Zoom session while the courtroom proceedings were paused. Hartsfield invited both Plaintiff's counsel and the Hamiltons' court-appointed attorney (who provided no representation to the Hamiltons) into the session. Judge Hartsfield emerged from the session and announced she had directed Plaintiff's counsel to continue representing Plaintiff until the Hamiltons' guardianship case concluded. The plaintiff surmised that Judge Judy A. Hartsfield had weaponized Plaintiff's attorney against Plaintiff and then promised to issue a judgment at the conclusion of the matter ordering Plaintiff to pay counsel.

Judge Hartsfield has again imposed a different standard on the Plaintiff. No party but the Plaintiff (an interested party) secured paid legal counsel in the Hamiltons' guardianship and conservatorship case. The Petitioners and other interested parties are self-represented, and the Hamiltons (the potential wards) have a court-appointed counsel who made only two calls to them within the last six months. It appears that Hartsfield was attempting to force Plaintiff to continue spending thousands of dollars on legal representation in order to harm Plaintiff financially.

### COUNT VIII: Retribution

The Plaintiff is entitled to adequate legal representation, but this has been hindered by Judge Hartsfield's aggressive and overbearing style of courtroom management. The Plaintiff's counsel has shown reluctance to challenge the judge's rulings, even when they

contradict the law, court rules **(Exhibit 9), and statutes such as MCL 700.5301 and MCL 700.5506, which address conflicts between Medical Powers of Attorney and Medical Durable Powers of Attorney and guardianship assignments.** Before the November 2024 probate hearing, the Plaintiff and her legal counsel agreed to part ways, as counsel appeared unable to provide effective representation and seemed intimidated by Judge Judy A. Hartsfield. Although the Plaintiff requested that counsel cease representing her, she continued to receive invoices totaling thousands of dollars, which she refused to pay. Ultimately, the Plaintiff and her counsel formally agreed to part ways (**Exhibit 10**).

When Plaintiff's counsel informed Judge Hartsfield that they had agreed to part ways, Judge Hartsfield ordered her clerk to convene a private Zoom session while the courtroom proceeding was paused. Hartsfield invited both Plaintiff's counsel and the Hamiltons' court-appointed attorney into the session. Judge Hartsfield emerged from the session and announced that she had directed Plaintiff's counsel to continue representing Plaintiff until the Hamiltons' guardianship case concluded. By so doing, Hartsfield sought to force Plaintiff to continue paying her legal representative exorbitant legal costs for unsatisfactory legal representation. **Judge Hartsfield, by requiring Plaintiff to maintain paid legal counsel, imposed a standard upon Plaintiff she had not imposed on any other party in the Hamiltons' guardianship/conservatorship case. No one involved in the guardianship matter, but Plaintiff had paid legal counsel.** Hartsfield sought to injure Plaintiff financially by ordering Plaintiff's paid legal counsel to continue representing Plaintiff against Plaintiff's wishes.

*Michigan's Estates and Protected Individuals Code (EPIC) [MCL 700.3701 – Attorney Fees in Estate Administration] grants Judge Hartsfield the authority to order payment for attorney services related to the estate, guardianship, or conservatorship.* However, it does not authorize Judge Hartsfield to order payment to an attorney hired by an interested party to represent that party's interests. Therefore, Judge Hartsfield acted outside her authority when she ordered Plaintiff to pay her personal attorney $5,102.25.

The Plaintiff hired a law firm to defend her against false and slanderous allegations on guardianship/conservatorship petitions filed by family members in the Wayne County Probate Court. If left uncontested, these statements could render Plaintiff ineligible to serve as a guardian or conservator for any party in the future, including Helen Hamilton and Willie Hamilton. The scope of Plaintiff's contract with the law firm did not require the firm to provide any services to the Hamiltons or their estate. For the following reasons, Judge Hartsfield lacked jurisdiction to issue a ruling ordering Plaintiff to pay her attorney $5,102.25:

1. Plaintiff never had a contract with the attorney who represented her. Plaintiff's contract was with the attorney's law firm. Therefore, Judge Hartsfield ordered Plaintiff to pay a party with whom she never had a contract.

2. Judge Hartsfield's order to pay the attorney, when viewed in conjunction with her order for the attorney to continue functioning as Plaintiff's legal counsel after Plaintiff and the attorney agreed to part ways, was intended to harm Plaintiff financially by causing her to continue incurring exorbitant legal expenses.

3. Plaintiff has a legitimate dispute with the law firm, as Plaintiff cannot discern the origin of charges billed by the firm. The charges are exorbitant given the work, or lack of work, performed by the firm.

4. Plaintiff has a *legal right* to have her dispute with the law firm addressed in an appropriate venue. Judge Hartsfield entered an order without resolving the dispute between Plaintiff and the law firm—again, a dispute that the court had no authority to address, as it was outside the probate court's subject matter jurisdiction.

5. Plaintiff has a *legal right* to challenge billing if she believes the representation provided by the law firm was ineffective, as follows:

   o Plaintiff's legal counsel seemed afraid of Judge Judy A. Hartsfield and never challenged her, even when she misstated court rules.

   o Plaintiff's counsel submitted *Objections* to the court in August 2024 but failed to push for a review of those objections in defense of Plaintiff.

   o Plaintiff's counsel failed to advocate for Plaintiff when Judge Hartsfield issued *unreasonable orders*, such as threatening to hold Plaintiff in contempt of court if she did not compel her parents to submit to a neuropsychological evaluation by Judge Hartsfield's court-appointed neuropsychiatrist whom Willie Hamilton did not trust to conduct an objective evaluation.

   o Plaintiff's counsel failed to inform Plaintiff of matters discussed with Judge Judy A. Hartsfield and Lachelle Caver during the closed door Zoom meaning, leaving Plaintiff to believe Judge Hartsfield had weaponized Plaintiff's attorney.

**COUNT IX: Conspiracy**

Under the Michigan Penal Code—**MCL 750.157a**, Conspiracy is defined as follows: *"If two or more persons conspire to commit a crime, they shall be guilty of conspiracy to commit that crime, and shall be punished in the same manner as if they had committed the crime*

*itself."* The Plaintiff presents clear evidence in her civil case of the petitioners' conspiracy to harm her. The Plaintiff firmly believes this conspiracy is being furthered by officers of the court and the Detroit Police Department (DPD), as evidenced by her false arrest. Also, the actions guardianship petitioners have taken reveal knowledge and expertise far beyond their collective abilities and personal legal capacity.

## COUNT X: TORT CLAIMS EMANATING FROM STATE AND FEDERAL RICO VIOLATIONS

The actions of Michigan Probate Court judges and individuals involved in various aspects of probate matters form a coordinated enterprise that systematically exploits vulnerable individuals for financial gain through the mismanagement of wards' assets. The Plaintiff can provide evidence of court officials, guardians, conservators, and affiliated professionals' willingness to engage in lawlessness and fraud to gain control over the estates that vulnerable seniors have amassed over a lifetime. The current structure and operation of Michigan Probate Courts ensures the continuity of the criminal enterprise within Michigan's probate court system, which extends beyond the individual acts of those involved. Influential companies and individuals who benefit from the system as it currently exists collaborate with political leaders to preserve it, facilitating the rapid and ongoing transfer of wealth from seniors to system beneficiaries.

The Plaintiff seeks compensation from the State of Michigan for tort claims arising from the Wayne County Probate Court's RICO violations and acts of retaliation against the Plaintiff for challenging Judge Judy Hartsfield and corruption in the probate court enterprise. Plaintiff claims include:

**Intentional Infliction of Emotional Distress (IIED) and Harassment.**

The conduct of Defendants Judy A. Hartsfield and Sheila Ross has been persistent, outrageous, reckless, and beyond the bounds of decency. Judge Hartsfield and, potentially, Sheila Ross have been unrelenting in their efforts to harm the Plaintiff both emotionally and financially. Defendant Judge Judy A. Hartsfield sought to financially harm the Plaintiff by forcing her to spend thousands of dollars on an unwarranted and unjustified guardianship action (**MCL 750.145n**).

**The State's Failure to Curtail Systemic Abuse Has Harmed Plaintiff.**

The State of Michigan has a duty to act. It has long been aware that its probate courts collectively function as a criminal enterprise but has refused to stop the abuses in its courts.

The plaintiff sent a document to the Chief Judge of the Wayne County Probate Court, alleging improprieties in the handling of the guardianship/conservatorship case involving

Helen Hamilton and Willie Hamilton (**Exhibit 11**). The plaintiff holds both the Medical Power of Attorney and Durable Power of Attorney for her parents. The plaintiff also forwarded a copy of the document to Ms. Cooper, an employee of the State of Michigan, who agreed to forward the complaint to the appropriate parties within Michigan State Government, including the Attorney General's Office. The plaintiff later filed a formal complaint against Judge Judy Hartsfield and the Probate Court during a visit to the Governor's Office.

The State of Michigan has published numerous reports acknowledging the criminal nature of its probate court system and the constitutional violations associated with it. Despite this recognition, the system continues to operate unchecked, devastating the lives of seniors and others within its reach. The State's failure to implement measures to protect society's most vulnerable citizens during probate proceedings has caused significant harm to the plaintiff.

**DAMAGES**

The Plaintiff seeks compensation from the State of Michigan for tort claims arising from state and federal RICO violations in the amount of $2,000,000. In addition to seeking compensation from the State of Michigan under state and federal RICO statutes, the Plaintiff seeks compensation from Judge Judy A. Hartsfield and Sheila Ross in their personal capacities for damages sustained while acting outside the scope of their employment, in the amount of $1,000,000 each.

**RELIEF REQUESTED**

Plaintiff respectfully requests that this Court grant the following relief:

1.  Enter judgment in favor of Plaintiff and against Defendants, including Judy A. Hartsfield, the Wayne County Probate Court, Attorney Sheila Ross, and the State of Michigan for the harm caused by the unlawful actions described herein.

2.  Award compensatory and punitive damages to Plaintiff for the emotional distress, financial harm, and deprivation of rights suffered due to the misconduct of Judge Hartsfield, Sheila Ross, and the Wayne County Probate Court.

3.  Grant appropriate injunctive relief to prevent Defendants from continuing their unlawful practices throughout the State of Michigan, including, but not limited to, the following reforms:

    Reform Probate Court Practices that are in Violation of RICO Law

24

- Address systemic corruption and widespread abuse within Michigan's probate court system, mandating reforms to correct long-term systemic failures and prevent further violations of constitutional rights such as.

    - Requiring independent oversight of all guardianship decisions to ensure fairness and legality.

    - Mandating periodic audits of financial transactions in conservatorships and guardianships actions to ensure proper management of senior assets.

    - Requiring enhanced transparency in court proceedings and regular updates on the senior's welfare and financial status to ensure accountability.

    - Implementing third-party oversight by independent investigators or monitors to oversee probate decisions affecting seniors.

    - Implement processes to prevent conflicts of interest and unlawful practices.

Issue an Injunction to End Specific Actions and Ensure Due Process

- Halt specific illegal actions causing immediate harm to seniors as identified in studies and reports.

- Implement measures to prevent violations of constitutional rights due to the denial of due process, such as failure to provide fair hearings or adequate legal representation.

- Require a full examination and resolution of allegations made in guardianship/conservatorship petitions before attempting to determine the need for guardianship or conservatorship.

- Remove judges from the selection process for individuals (e.g., guardian ad litems, guardians).

- Enlist citizens and advocates in helping to monitor probate court actions and institute a process of ongoing reform.

- Create a complaint mechanism to ensure speedy review of grievances and allegations of wrongdoing.

- Increase transparency by involving advocates and citizens in a probate court monitoring process.

- Implement a website that provides ongoing information about guardianship concerns and discoveries by citizen probate court monitors.

Ensure Additional Relief

- Introduce remedies recommended by the Plaintiff and advocates for the aging, including a decision matrix that requires probate judges to attest (via signed affidavits) at every step of the probate process to legal and procedural compliance with Michigan probate laws and rules.

- Institute other needed reforms widely endorsed by advocates seeking to overhaul the Michigan guardianship/conservatorship process.

- Award any other relief the Court deems just and proper to protect the constitutional and civil rights of Michigan's vulnerable adults.

Plaintiff requests that the Court grant these measures to redress the harm caused to Plaintiff and to prevent further harm to Plaintiff and others by ensuring greater accountability and addressing the systemic issues that have led to ongoing constitutional violations of the rights of vulnerable individuals *trapped* in the Michigan probate system.

Respectfully submitted,

Jerroll Sanders
19315 Monica, Detroit Residence
Detroit, Michigan 48221
202.499.8286

26

## CERTIFICATE OF SERVICE

2 hereby certify that on February 2, 2025, a true and correct copy of the foregoing complaint was served on The State of Michigan.

**EXHIBITS**
**To be Included in Subsequent Filing**